**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cr-80041-DMM**

**UNITED STATES OF AMERICA,**

**v.**

**ROBERTO ANDRES-TOMAS,**

**Defendant.**
______________________________________/

**UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE**

COMES NOW, the United States of America, by and through the undersigned Assistant United States Attorney, and submits the following response in opposition to the Defendant's Sentencing Memorandum and Request for a Variance (D.E. 35). The Defendant's request for downward variance should be denied. To the contrary, given the nature of the offense, the need to protect the public from future crimes, and to promote respect for the law, the United States seeks a sentence of incarceration at the high end of the advisory guideline range based on the factors set for the in 18 U.S.C. § 3553(a).

The defendant offered and distributed a deadly drug to a minor in return for his sexual gratification. Despite multiple prior convictions for distributing controlled substances which resulted in a year long sentence, the defendant returned to distributing fentanyl. Despite knowing he was previously implicated in a drug overdose investigation, he continued distributing fentanyl.

## I. Sentencing Factors

To arrive at an appropriate sentence, the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant, and impose a sentence sufficient,

but not greater than necessary, to account for the need for a sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, afford adequate deterrence, protect the public from further crimes of the defendant, and provide the defendant with needed education or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3353(a)(1)-(2). The Court may give greater weight to some factors than others. *See United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). While guidelines sentences generally should approximate the § 3553(a) factors, a variance may be appropriate where "the case at hand falls outside the 'heartland' to which the [United States Sentencing Commission] intends individual guidelines to apply" or where "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 351 (2007).

**A. Nature, Circumstances, and Seriousness of the Offenses**

In this case, the nature and circumstances of the offense justify a sentence of incarceration at the high end of the guideline range. The seriousness of the offense is evident from the minimum mandatory sentence imposed for distribution of a controlled substance leading to death. However, as discussed below, the nature and circumstances of this offense are egregious compared to other similar federal prosecutions.

L.Y. would not have died on December 12, 2025, if the defendant had not proactively offered her drugs. L.Y. did not contact the defendant seeking narcotics. The defendant contacted L.Y. and offered her narcotics. On December 10, 2025, the defendant messaged L.Y. offering drugs and requesting sexual favors (PSI ¶ 10 at D.E. 36). L.Y. responded that she was unavailable because she was at work (*Id.*). On December 12, 2025, the defendant again contacted L.Y. and requested sexual favors (PSI ¶ 12). L.Y. agreed and the defendant responded that he was on his

way and would be bringing narcotics (*Id.)*. L.Y. did not initiate the drug transaction in this case – the defendant did. The defendant offered narcotics to L.Y. on the day that she died.

The defendant and L.Y. were not in a romantic relationship. She was 17 years old and he was 25 years old. She was addicted to drugs. He was merely her dealer. His only concern was what L.Y. could do for him. The defendant was not dealing drugs to L.Y. to fund his own addiction. L.Y. was not paying him money. The conversations between the defendant and L.Y. do not discuss any monetary price for the narcotics. The conversations instead include the defendant's offers of payment for specific sex acts, requests for specific sex acts, and request that L.Y. prepare for those sex acts by showering. The evidence also confirms that those sex acts took place, as the defendant's DNA was found on L.Y. after her death. Although the United States chose not to pursue charges related to the defendant's solicitation of a minor for a commercial sex act, the elements of 18 U.S.C. §2422(b), coercion and enticement of a minor to engage in sexual activity, are satisfied by the offense conduct as documented in the PSI. The defendant used a means of interstate commerce, namely a cellphone, to induce L.Y., who was under 18 years of age, to engage in prostitution. *See* 18 U.S.C. §2422(b). The defendant suggests that both the defendant and the L.Y. were in a "consensual relationship to use illegal drugs." (D.E. 35, p. 3). However, L.Y. was not a consenting adult, she was 17 years old. The sexual act was the product of coercion and not affection.

**B. Characteristics of the Defendant**

As with the seriousness and nature and circumstances of the offense, the characteristics of the defendant also support a sentence at the high end of the Guidelines. While the defendant has provided the court with several character letters from various community members, the positive work ethic and "strong moral character" described in those letters is inconsistent with the defendant's minimal amount of lawful employment, significant criminal history, and lack of

remorse in this case. The defendant admits that the only legitimate employment he held was for his father's company and that he has worked for that company minimally since 2020. However, it is evident from the defendant's criminal history that the defendant's occupation is that of drug dealer. He has repeatedly been arrested for selling drugs, including both fentanyl and cocaine, and despite these arrests and convictions has continued selling drugs. The fact he was on probation didn't deter him from selling fentanyl in April and August of 2023. Moreover, the defendant has expressed no remorse for the death of 17-year-old L.Y. He was emotionless when he was notified that he was being investigated for a homicide.

The death of L.Y. is not the first fentanyl overdose in which the defendant has been identified as a potential source of narcotics. The defendant was previously identified as the possible source of fentanyl in an overdose death that occurred in April 2023. The defendant was identified in that case because his phone number was in the decedent's phone and they had exchanged text messages regarding narcotics transactions (PSI ¶ 41). The defendant thereafter sold fentanyl to the undercover officer on two occasions (PSI ¶¶ 41 and 42). PBSO filed a probable cause affidavit, in which the defendant's connection to the overdose death was referenced, and the defendant was charged with the sale of fentanyl. The defendant was arrested and ultimately plead guilty to two counts of sale of fentanyl. The defendant was therefore aware of his connection to this prior overdose case and the dangers associated with fentanyl use. The defendant has, nevertheless, continued to engage in the distribution of fentanyl.

## CONCLUSION

The Probation Officer has correctly calculated the defendant's Guidelines range as 292 to 365 months. A sentence at the high end of the advisory Guideline range is substantively reasonable and sufficient, but not greater than necessary, to address the factors set forth in 18 U.S.C. § 3553(a).

Consequently, the United States recommends this Court deny the defendant's motion for variance and sentence the defendant to 365 months of incarceration followed by 3 years of supervised release.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: /s/ Suzanne Huyler
Suzanne Huyler
Assistant United States Attorney
District Court No. A5503350
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1013

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 2, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ *Suzanne Huyler*
Assistant United States Attorney